IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 16-cv-00726-RBJ

LaFONDFX, INC.,

    Plaintiff,

v.

STEVE KOPELMAN, Husband,
KARINE KOPELMAN, Wife, and
ROB ZOMBIE'S GREAT AMERICAN NIGHTMARE, d/b/a Haunt Holdings,

    Defendants.

---

### ORDER

---

This matter is before the Court on three pending motions that are fully briefed and ripe for review: (1) defendants' motion for bond, ECF No. 38; (2) defendants' motion for partial summary judgment and determination of question of law, ECF No. 40; and (3) a motion for summary judgment filed by defendant Karine Kopelman, ECF No. 41. For the reasons below, the Court GRANTS all three motions.

### I. FACTS

In the summer of 2014 defendant Steve Kopelman, a producer of haunted house attractions in Arizona and Illinois, hired plaintiff LaFondFX, Inc. ("LFX"), a Colorado company run by Louis LaFond, to build haunted houses for his business to use during the upcoming Halloween season. *See* Compl., ECF No. 2 at 3 (¶9). The parties agree that an unsigned August

29, 2014 Work Agreement governed their rights and obligations under this deal.[1] *See* ECF No. 46 at ¶2; ECF No. 56 at ¶3.

Briefly summarized, that Agreement required plaintiff to build three "haunts" in exchange for $156,177.00 to be paid by defendants to LFX in installments.[2] ECF No. 56-1 at 3 (August 29, 2014 Work Agreement). LFX would also receive compensation to offset its labor costs and the cost to ship the completed haunts to defendants. *Id.* Furthermore, by the terms of the Agreement, Mr. LaFond himself was also specifically and individually promised $40,000.00 to be paid by defendants in four equal weekly payments. *Id.* at 4.

The Agreement likewise set out the parties' rights and obligations should the other party breach the contract or terminate it early. For instance, if plaintiff prematurely terminated the Agreement, it forfeited any remaining fees described above that defendants owed to it at that time. *Id.* at 2. It would also be required to pay back any money defendants had thus far furnished. *Id.* If defendants terminated early, plaintiff was promised that it would receive back the haunts within ten days. *Id.* The contract also specified that if defendant was late with any payments that it "owed LFX[,]" it would be charged an annual interest rate of 36% on those delinquent payments. *Id.* at 4. Finally, the parties agreed that Colorado law would govern how the contract was to be construed, interpreted, and applied. *Id*.

---

[1] This contract was apparently created by the parties after plaintiff had already constructed the three haunts and shipped them to Mr. Kopelman. *See* Compl., ECF No. 2 at 5 (¶¶19–24). It apparently went through three iterations. *See id.* (¶¶21, 22, 24). However, as mentioned above, the parties now agree that the third and "final" version created on August 28, 2014 governed their agreement regarding these three haunts. *See* ECF No. 46 at ¶2; ECF No. 56 at ¶3.

[2] "Defendants" include the three named defendants in the case caption—Mr. Kopelman, Karine Kopelman (Mr. Kopelman's wife), and Mr. Kopelman's business. However, as will be discussed in greater detail below, Mrs. Kopelman was not a party to the Agreement and played no role in the events giving rise to this lawsuit. The Court nevertheless uses the word "defendants" in this order for ease of use.

Plaintiff subsequently completed construction on these three "haunts" and shipped them to Mr. Kopelman in August of 2014. *See* ECF No. 2 at 4–5 (¶¶17–19). In this action, plaintiff asserts that while defendants have paid some of the money they owe per the parties' Agreement, defendants have thus far failed to pay plaintiff the full amount under the parties' contract. *See* ECF No. 2 at 4 (¶16). Plaintiff also alleges, among other things, that defendants terminated that agreement early. *See id.* at 8–9 (¶¶44, 52, 56).

## Procedural History

On September 4, 2015 plaintiff filed suit against defendants in Arizona state court to recover these allegedly unpaid amounts. *See generally id.* In its complaint, plaintiff asserted four claims for relief: (1) a claim for breach of the parties' contract; (2) a claim for specific performance; (3) a claim for declaratory judgment that defendants breached and/or terminated the Agreement; and (4) a claim for unjust enrichment. *Id.* at 8–10 (¶¶42–64). It also sought a temporary restraining order ("TRO") to prohibit defendants from moving the haunts outside the state of Arizona during the pendency of this lawsuit. *Id.* at 48–60 (plaintiff's motion for a TRO).

After a hearing on the TRO, the Arizona state court issued that order on August 18, 2015. *See id* at 95–97 (TRO order). It subsequently prohibited defendants from moving the haunts, but required at the same time that plaintiff post a $10,000.00 bond to insure against defendants' potential lost profits as a result of the TRO. *See id.* The Court nevertheless explained in its order that "if [defendants] post[ed] a bond in the amount of $40,000.00 . . . to remain in place until the matter is resolved or an order issued releasing such bond, then this restraining order shall be deemed satisfied and the property may be removed from the State of Arizona." *Id.* at 96. Although plaintiff never posted its $10,000.00 bond, defendants subsequently posted a $40,000.00 bond and removed the haunts from Arizona. *See id.* at 103 (bond receipt).

Defendants subsequently removed the case to the District of Arizona, which then transferred it to this Court given the parties' choice of law provision within their Agreement. *See* ECF No. 1 at 1. On June 1, 2016 defendants answered plaintiff's complaint. ECF No. 15. As part of that answer, defendants asserted a counterclaim against LFX for breach of the Agreement for allegedly constructing haunts that were, among other things, unsafe and of poor quality.[3] *See id.* at 8. Mr. Kopelman subsequently amended that counterclaim on September 2, 2016. ECF No. 47.

Four days later on September 6, 2016 defendants filed a motion for bond to compel plaintiff to pay the $10,000.00 bond it allegedly never posted under the Arizona state court TRO. ECF No. 38. That same day, defendants filed a motion for partial summary judgment and determination of question of law, asserting that plaintiff's claim for unjust enrichment fails as a matter of law and seeking a ruling by this Court that the interest rate provision within the parties' Agreement does not apply to the contract provision promising $40,000.00 to Mr. LaFond individually. ECF No. 40. The next day, Mrs. Karine Kopelman, Mr. Kopelman's wife, filed a motion for summary judgment. ECF No. 41. Although the parties have subsequently filed numerous additional motions, see, e.g., ECF Nos. 74–75, 86, these three motions are the only motions that are ripe for review at this time.

## II. STANDARD OF REVIEW

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving

---

[3] This counterclaim was filed by Mr. Kopelman. *See* ECF No. 15 at 8. It appears that Karine Kopelman, Mr. Kopelman's wife, did not join that counterclaim. *See id.*

party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court will examine the factual record and make reasonable inferences in the light most favorable to the party opposing summary judgment. *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

### III. ANALYSIS

As mentioned above, while the parties have filed numerous motions in this case, there are only three motions that are currently fully briefed and therefore ripe for review. These are: (1) defendants' motion for bond, ECF No. 38; (2) defendants' motion for partial summary judgment and determination of question of law, ECF No. 40; and (3) defendant Karine Kopelman's motion for summary judgment, ECF No. 41. I address each motion in turn.

**A. Defendants' Motion for Bond [ECF No. 38].**

First, defendants have moved to compel plaintiff to post the $10,000.00 bond the Arizona state court purportedly required plaintiff to pay under the TRO that court issued on August 18, 2015. ECF No. 38. They argue that the transcript from the TRO hearing and the text of the TRO itself reveal that that order was conditional upon plaintiff posting such a bond. *Id.* at 2. They contend that for over a year plaintiff has failed to do so. *Id.* at 2–3. They subsequently argue that plaintiff must pay up, and that if plaintiff continues not to, the TRO must be dissolved and defendants' $40,000.00 bond, which they believe was an "alternative" means by which they could comply with the TRO, must be returned. *Id.* Plaintiff counters that it need not post a

bond of its own because the TRO was effectively "dissolved" when defendants posted theirs. ECF No. 50 at 1–2. They argue in the alternative that their bond requirement should be dismissed because there is no factual support for such a requirement. *Id.* I agree with defendants.

As the TRO and TRO hearing transcript make clear, to comply with the TRO defendants had to *either* refrain from moving the haunts out of the state of Arizona, or post a $40,000 to effectively "satisfy" this obligation. *See, e.g.*, ECF No. 50-1 at 126:2–4 ("[Mr. Kopelman] could comply with this injunction *by* posting this bond[.]") (emphasis added); ECF No. 38-1 at 2 ("However, if Defendant posts a bond in the amount of $40,000.00 . . . then this restraining order shall be deemed satisfied . . . ."). Thus, defendants' decision to post a $40,000.00 bond, see ECF No. 38-3, did not *dissolve* the TRO, but rather was the means by which defendants complied with it. *See* ECF No. 38-1 at 2. With that understanding of the TRO, I disagree with plaintiff's first argument that by defendant's posting of a bond, the TRO was "dissolved" and plaintiff's obligation to post its bond per the terms of the TRO was essentially mooted.

Instead, I find that the Arizona state court made it clear that by issuing the TRO it was also requiring plaintiff to post a $10,000.00 bond *regardless* of which "alternative" defendants ended up choosing to comply with the order. *See* ECF No. 38-1 at 3; ECF No. 50-1 at 125:24–126:4. This requirement was apparently necessary to insure against costs or damages defendants might sustain from the order, thereby satisfying the requirements for issuing a TRO under Arizona Rule of Civil Procedure 65(c)(1). *See* Ariz. R. Civ. P. 65(c)(1) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in such amount as the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."); *see also* Fed. R. Civ. P. 65(c)(1) (same).

With their motion, defendants have brought to the Court's attention that while they have met their obligations under the TRO by choosing to post a bond instead of leaving the haunts in Arizona, see ECF No. 38-3, plaintiff has thus far failed to meet its TRO requirement to post a bond. Accordingly, the Court directs that plaintiff post a $10,000.00 bond with the Clerk of the Court within 30 days to comply with that order. Should plaintiff fail to do so, the Court directs that the TRO be dissolved and that defendants receive back the $40,000.00 bond they have already posted. Defendants' motion [ECF No. 38] is therefore GRANTED.

### B. Defendants' Motion for Partial Summary Judgment and Determination of Question of Law [ECF No. 40].

Next, defendants' move for partial summary judgment on plaintiff's claim for unjust enrichment and for a determination that the interest provision within the parties' Agreement does not apply to the money allegedly owed to Mr. LaFond individually under that contract.[4] *See* ECF No. 40 at ¶¶12–18. Regarding plaintiff's claim for unjust enrichment, defendants assert that because the parties had a contract, plaintiff's quasi-contract claim for unjust enrichment fails as a matter of law. *Id.* at ¶¶12–13. On the interest provision question, which apparently is important for later potential damages calculations, they assert that the interest rate does not apply to funds it allegedly owes to Mr. LaFond because, by its plain language, the contract unambiguously states that that $40,000.00 was to be paid to *Louis LaFond* and that the 36% interest rate provision only applies to overdue payments "owed *LFX*." *Id.* at ¶¶14–18. I find both arguments persuasive.

First, defendants are correct that under Colorado law, a claim for unjust enrichment generally cannot proceed in the face of a valid, enforceable contract between the parties that will

---

[4] The interpretation of a written contract is a question of law. *See, e.g.*, *Town of Silverton v. Phoenix Heat Source Sys., Inc.*, 948 P.2d 9, 11 (Colo. App. 1997), *as modified on denial of reh'g* (May 1, 1997); *see also Kincaid v. W. Operating Co.*, 890 P.2d 249, 252 (Colo. App. 1994) ("Whether a written contract is ambiguous is a question of law . . . .").

govern their rights and remedies. *See, e.g.*, *Harris Grp., Inc. v. Robinson*, 209 P.3d 1188, 1205 (Colo. App. 2009) ("In a contractual context, 'a party cannot recover for unjust enrichment by asserting a quasi-contract when an express contract covers the same subject matter because the express contract precludes any implied-in-law contract.'") (quoting *Interbank Invs., LLC v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003)).  Although there are two exceptions to that general rule, I find none to be applicable here.  *See Interbank*, 77 P.3d at 816.  Instead, I conclude that, because the parties agree that the Agreement dated August 29, 2014 governed the deal, see ECF No. 46 at ¶2; ECF No. 56 at ¶3, plaintiff cannot recover on its "quasi-contractual" theory of unjust enrichment.  *See Harris Grp., Inc.*, 209 P.3d at 1205.  Defendants are therefore entitled to a judgment in their favor on Count IV of plaintiff's complaint.

Furthermore, I find convincing defendants' argument that the 36% interest rate provision within that contract does not apply to the $40,000.00 defendants allegedly owed to Louis LaFond personally.  By its plain language, the Agreement, which *plaintiff* drafted, see ECF No. 52-1 at ¶¶8, 11, distinguishes between payments to be made to LFX and payments that were to be made to Mr. LaFond, ECF No. 56-1 at 3–4.  Distinguishing between those recipients, the contract then states that a 36% interest rate will be applied to delinquent amounts that were "owed *LFX*." *Id.* at 4.  Given this language and the way the entire contract is drafted, I find that the Agreement is unambiguous on this question of whether the interest provision applies to the $40,000.00 allegedly owed Mr. LaFond *personally* under that Agreement.  It does not.  *See id.*; *see also Town of Silverton v. Phoenix Heat Source Sys., Inc.*, 948 P.2d 9, 12 (Colo. App. 1997), *as modified on denial of reh'g* (May 1, 1997) ("A trial court may not look beyond the plain words

of a contract to interpret the parties' underlying intent unless the contract terms are ambiguous or are used in a special or technical sense not defined in the contract.").

Reaching that conclusion, I find plaintiff's arguments to the contrary unavailing. Plaintiff contends, for instance, that whether this provision applies to payments owed Mr. LaFond (whom, it points out, was not individually a party to the contract) is a fact question because the contract, when read holistically, is ambiguous. ECF No. 52 at 7–10. It also goes on to argue that this distinction between recipients of defendants' payments is one without a difference because, regardless of what a "payment" was called or to whom a payment was supposed to be made under the Agreement, the parties understood that all payments would go to LFX and that all payments would have been accounted for on LFX's books as payments made to it. *Id.* at 8–9. Finally, it points out that because defendants had already made all of their payments except for labor costs, shipping costs, and the payments to Mr. LaFond when this contract was drafted, the interest provision would be rendered superfluous unless it includes the $40,000.00 payment to Mr. LaFond. *Id.* at 9.

First, for the reasons explained above, I find that plaintiff is wrong when it argues that the contract is ambiguous, even when that Agreement is construed "holistically" as this Court must do.[5] *See, e.g.*, *Town of Silverton*, 948 P.2d at 11. However, even if this portion of the contract was ambiguous, under Colorado law any ambiguity within a contract should be construed "strictly" *against* the drafter—here, against plaintiff. *See, e.g.*, *Colo. Interstate Gas Co. v. Chemco, Inc.*, 833 P.2d 786, 789 (Colo. App. 1991), *aff'd sub nom. Colo. Interstate Gas Co. v.*

---

[5] Plaintiff tries to bring in extrinsic evidence, such as how its business operates and that it considered this payment to Mr. LaFond to be the company's "profit," to render this clause of the contract ambiguous. *See, e.g.*, ECF No. 7–10. Ambiguities, however, cannot be "created" through the use of extrinsic evidence. *See, e.g.*, *Kincaid v. W. Operating Co.*, 890 P.2d 249, 252 (Colo. App. 1994) ("*If* there is an ambiguity as to the terms of a contract, extrinsic evidence is admissible to prove the intent of the parties to that contract.") (emphasis added).

*Chemco, Inc.*, 854 P.2d 1232 (Colo. 1993). Thus, even granting to plaintiff its ambiguity argument, under Colorado law the interest provision on payments "owed LFX" should still be construed *not* to apply to payments designated specifically for "Louis LaFond.".

Furthermore, my reading of the interest provision does not render that clause superfluous since it would still apply to the labor and shipping costs allegedly owed plaintiff.[6] *See* ECF No. 56-1 at 2–4. Although plaintiff contends that the payments for labor were to be made directly to its laborers in cash, and therefore that they were not payments "owed LFX," I find, again, that such an interpretation conflicts with the plain text of the contract, which does not state those payments were to be made directly to the laborers and which groups those payments under the description of those defendants were required to pay LFX. *See id.* Such an argument also does not address the point that the interest rate provision is not rendered superfluous because it nonetheless applies to defendants' payments for the cost of shipping the haunts, which defendants allegedly still owed plaintiff under the Agreement. *See id.* at 2. Plaintiff itself even contends in its complaint that the interest rate provision applies to these payments. ECF No. 2 at 6 (¶34).

Thus, for the reasons above, the Court GRANTS defendants' motion for partial summary judgment and determination of a question of law [ECF No. 40]. Accordingly, I dismiss with prejudice Count IV of plaintiff's complaint asserting a claim for unjust enrichment, and find that the interest rate provision within the parties' August 29, 2014 Agreement does not apply to the $40,000.00 allegedly owed by defendants to Mr. LaFond personally.

### C. Defendant Karine Kopelman's Motion for Summary Judgment [ECF No. 41].

---

[6] This interest rate would apply to these payments, subject of course to whether all of these terms within the parties' contract are ultimately found to be valid and enforceable.

Lastly, defendant Karine Kopelman moves for summary judgment on all of plaintiff's claims to the extent they are asserted against her. ECF No. 41. She argues that she was not a party to the contract between plaintiff and Mr. Kopelman, that she played no role in her husband's business, and that she essentially had nothing to do with this dispute. *See generally* ECF No. 41. In its response, plaintiff does not dispute that these claims against Mrs. Kopelman should be dismissed (and would have been but for a change in counsel) or that she should be dismissed as a defendant from the case. *See* ECF No. 51 at ¶2. I agree.

Plaintiff nevertheless goes on to vaguely assert that, even though it agrees that its claims against Mrs. Kopelman should be dismissed, it reserves the right to collect a future judgment against the remaining defendants by satisfying that judgment out of property in which Mrs. Kopelman may have an interest. *Id.* at ¶3. Defendants interpret this as an argument that plaintiff believes dismissal of its claims against Mrs. Kopelman should be without prejudice. *See* ECF No. 55 at 1–2.

However, I interpret plaintiff's response to merely claim that it should not be prohibited from later satisfying a judgment against the other defendants from property in which Mrs. Kopelman may have a joint interest. To that, I simply say this: should plaintiff prevail in this case, it can satisfy a judgment, to the extent the law permits, out of interests in property owned by those defendants against whom it receives a judgment. Mrs. Kopelman, however, should not and will not be a defendant named in any judgment. Accordingly, the Court GRANTS Mrs. Kopelman's motion for summary judgment [ECF No. 41] and dismisses her from this lawsuit. I therefore direct a judgment in Mrs. Kopelman's favor on all of plaintiff's claims against her and dismiss those claims with prejudice.

**ORDER**

For the reasons above, the Court GRANTS defendants' motion for bond, ECF No. 38, GRANTS defendants' motion for partial summary judgment and determination of question of law, ECF No. 40, and GRANTS defendant Karine Kopelman's motion for summary judgment, ECF No. 41.  Accordingly, the Court:

- Orders that plaintiff post a bond in the amount of $10,000.00 with the Clerk of the Court within 30 days.  Should plaintiff fail to do so, the Court hereby dissolves the TRO entered by the Arizona state court on August 18, 2015 and orders that the $40,000.00 bond defendants posted in that court to satisfy that TRO be returned to them;

- Grants a judgment in favor of defendants on plaintiff's claim for unjust enrichment contained within Count IV of plaintiff's complaint and dismisses that claim with prejudice.

- Finds that the 36% interest rate clause within the parties' August 29, 2014 Work Agreement pertaining to delinquent payments by defendants does not apply to the $40,000.00 amount promised directly to "Louis LaFond" under the terms of that contract; and

- Grants a judgment in favor of defendant Karine Kopelman on all of plaintiff's claims against her.  The Court accordingly dismisses with prejudice all of plaintiff's claims against Ms. Kopelman and dismisses her from this lawsuit.

DATED this 2nd day of March, 2017.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge