IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 16-cv-00726-RBJ

LaFONDFX, INC.,

    Plaintiff/Counter-Defendant,

v.

STEVE KOPELMAN, and
ROB ZOMBIE'S GREAT AMERICAN NIGHTMARE, d/b/a Haunt Holdings,

    Defendants/Counter-Plaintiffs.

# ORDER

This matter is before the Court on two pending motions: (1) plaintiff LaFondFX, Inc.'s ("LFX") Motion for Partial Summary Judgment on Defendants' Counterclaim, ECF No. 74; and (2) defendant Steven Kopelman's Second Motion for Determination of Question of Law, ECF No. 75. For the reasons below, the Court DENIES plaintiff's motion [ECF No. 74] but GRANTS Mr. Kopelman's motion [ECF No. 75].

## I. STANDARD OF REVIEW

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim."

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court will examine the factual record and make reasonable inferences in the light most favorable to the party opposing summary judgment. *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

## II. ANALYSIS

The Court previously discussed the background and procedural history of this suit in its order dated March 3, 2017. *See* Order, ECF No. 89, at 1–4. With these pending motions, filed before the Court's prior order but not ripe until recently, both parties seek rulings in their favor on discrete issues. First, LFX seeks a partial summary judgment on defendants' counterclaim for breach of contract. *See* ECF No. 74. Mr. Kopelman seeks a ruling of his own that LFX's damages, should it ultimately prevail in this breach of contract action, are capped at $53,029.28. *See* ECF No. 75. I discuss both motions in turn and in greater detail below.

### A. LFX's Motion for Partial Summary Judgment on Defendants' Counterclaim for Breach of Contract [ECF No. 74].

LFX argues that because Mr. Kopelman terminated the parties' contract for an alleged "defect" with the "haunts" LFX built (i.e., an apparent failure to apply flame retardant) and did not give plaintiff a 30-day window to "cure" this alleged defect per Section 5.1 of the parties' Agreement, defendants are precluded from asserting a breach of contract counterclaim. *See* ECF No. 74 at 5–7; ECF No. 74-2 at 4 (the Agreement). In response, defendants argue that LFX has waived this "right to cure" affirmative defense by failing to plead it. *See* ECF No. 88 at 2–10. Alternatively, they argue that LFX's motion should be denied because genuine issues of material fact exist on three crucial issues related to plaintiff's affirmative defense: (1) whether LFX knew

2

about the defects with the haunts before it shipped them to defendants; (2) whether LFX was in fact given a reasonable opportunity to cure; and (3) whether LFX's alleged breaches were even "curable."[1] *See id.* at 24–27. Finding that a fact question exists at the very least over whether defendants provided LFX with a reasonable opportunity to "cure" the alleged defects with the haunts, the Court DENIES LFX's motion.[2]

As defendants point out, at the meeting when they eventually terminated their contract with LFX, Henry Cottel, Mr. Kopelman's partner, provided plaintiff's counsel with an "Options" document. *See* ECF No. 88-8 at 2 (Options document); Dep. of Henry Cottle, ECF No. 88-7 at 19:17–25, 28:3–23. That document referenced defects defendants found with plaintiff's work (e.g., the failure to apply flame retardant), and likewise ostensibly detailed several options defendants were giving plaintiff going forward for how to deal with those issues. *See* ECF No. 88-8 at 2. On its face, that document provided plaintiff with what it now claims it was not given: notice of the alleged defects with plaintiff's products and an opportunity to "cure." *See id.* Indeed, two out of the three "options" defendants apparently gave plaintiff through that document expressly allowed for continuation of the parties' Agreement after LFX "fixed" the flame retardant issue. *See id.*

For its part, LFX denies that defendants or Mr. Cottle ever identified the specific claimed deficiencies with plaintiff's work. ECF No. 74 at 4 n.3. It nevertheless argues that even if plaintiff was given this document, defendants immediately terminated the parties' contract

---

[1] Defendants also argue that a genuine issue of material fact exists over whether plaintiff has engaged in "fraudulent litigation conduct" which, they contend, would warrant an entry of judgment against plaintiff as a sanction. *See* ECF No. 88 at 20–24. At the time of writing this Order, plaintiff has filed a motion for sanctions, see ECF No. 86, and it appears that defendants are likely to do the same. Thus, the Court will address the parties' arguments on sanctions at a later date.

[2] The Court rejects defendants' first counterargument regarding waiver as it appears that plaintiff raised this affirmative defense regarding Section 5.1 of the parties' Agreement in its replies to both defendants' counterclaim and amended counterclaim. *See, e.g.*, ECF No. 22 at 2; ECF No. 46 at 2.

3

which, it contends, makes that the disputed issue of whether defendants gave plaintiff an opportunity to cure through this "Options" document immaterial. *See id.* I disagree.

Construing the facts in a light most favor to defendants as I must do at this point in the litigation, see, e.g., *Concrete Works of Colo.*, 36 F.3d at 1517, I find instead that it was possible that plaintiff rejected reasonable opportunities defendants gave it to cure *before* defendants terminated the contract at that same meeting. *See* ECF No. 88-7 at 28:3–23. Indeed, it is also possible based on the facts the parties provide that defendants terminated the contract because plaintiff elected the third "option" provided for in the "Options" document—i.e., that plaintiff would *not* make use of any opportunity to cure and that the parties would instead "let the attorneys settle the rest." *See id.*; ECF No. 88-8 at 2. Accordingly, I disagree with plaintiff and find that a fact question exists over plaintiff's "right to cure" affirmative defense. Its motion for summary judgment on defendants' counterclaim based on that argument is accordingly DENIED.

### B. Steven Kopelman's Second Motion for Determination of Question of Law [ECF No. 75].

Next, Mr. Kopelman has moved for a ruling that should plaintiff ultimately prevail in this suit, that its damages are capped at $53,029.28. *See* ECF No. 75. As Mr. Kopelman explains, that amount is what the parties agree is what defendants apparently still owe plaintiff under the parties' Agreement but which, to date, has not been paid. *See id.* at 2; Pl.'s Rule 26(a)(1) Initial Disclosures, ECF No. 75-1, at 7. He nevertheless acknowledges that the parties' Agreement includes what appears to be "liquidated damages" provisions. *See* ECF No. 74-2 at 3 (Sections 2.2 and 2.3). One of those provisions provides that if Mr. Kopelman breaches the Agreement, which is what plaintiff alleges in this suit, plaintiff is entitled to not only the amounts it has already received prior to the drafting of the agreement and any amounts defendants still owed it

4

under the remaining portions of the Agreement, but also to ownership and possession of the haunts it constructed for defendants. *See id.*

Faced with this provision, Mr. Kopelman nevertheless contends that plaintiff's damages must be capped at $53,029.28 because that provision is a "penalty" clause that is unenforceable under Colorado law. ECF No. 75 at 10–14. Plaintiff, by contrast, asserts that it can recover $405,591.55 in damages, arguing that the parties' provision should be interpreted as a "convey or pay" clause—in other words, a specific performance provision that provides that if defendants breach, that plaintiff can elect to obtain *either* the haunts (which it values at $405,591.55) *or* defendants' remaining financial obligations. ECF No. 75 at 13; ECF No. 81 at 9 (citing *Amanda Consol. Gold-Min. Co. v. People's Min. & Mill. Co.*, 64 P. 218 (Colo. 1901)). I agree with Mr. Kopelman.

At the outset, I note that plaintiff's interpretation of the clause in question is untenable. By its plain language, the parties' ostensible "liquidated damages" clause states that plaintiff is entitled to what it has already been paid, to defendants' remaining financial obligations, *and* to ownership of the haunts. ECF No. 74-2 at 3 (Section 2.2). Thus, this clause is not so much a "pay or convey" clause as it is a "pay *and* convey" clause. Furthermore, defendants are not obligated to convey the haunts to plaintiff elsewhere in the contract such that this provision could plausibly be construed as a "specific performance" remedy. *See* ECF No. 74-2. Rather, all of defendants' contractual obligations are monetary in nature. *See id*.

With that out of the way, I now address the crucial issue Mr. Kopelman raises: is such a clause enforceable as a valid liquidated damages clause, or is it better construed as an unenforceable "penalty" provision? Under Colorado law, three issues are relevant in deciding the answer to that question: (1) did the parties intend for the clause to be a "liquidated damages"

clause; (2) was the clause, at the time of contracting, a reasonable estimate of the actual damages of the non-breaching party; and (3) was it difficult to know the amount of actual damages resulting from a breach at the time of contracting such that a clause spelling out each parties' obligations in advance was necessary? *See, e.g.*, *Klinger v. Adams Cty. Sch. Dist. No. 50*, 130 P.3d 1027, 1034 (Colo. 2006). Here, I find that all three weigh in favor of a finding that such a clause is an unenforceable "penalty."

First, the parties apparently agree that this clause was not intended as a liquidated damages clause. *See* ECF No. 75 at 11; ECF No. 81 at 9 ("Section 2.2 of the contract was not intended to be a 'liquidated damages' clause.").

Second, I find that, on their face, the damages provided for in the clause were an exceedingly unreasonable estimate of the non-breaching parties' (i.e., plaintiff's) actual damages. *See Klinger*, 130 P.3d at 1034 (explaining that whether a liquidated damages provision constitutes a penalty is typically a question of fact "[u]nless the contract on its face establishes that the stipulated liquidated damages are so disproportionate to any possible loss as to constitute a penalty"). At the time of contracting, the only payments defendants owed to plaintiff (i.e., the "actual damages" plaintiff would suffer from a subsequent breach by defendants) were a fixed payment to Mr. LaFond as "profits," shipping expenses, per diems, and on-site labor, which totaled approximately $85,378.00. *See* ECF No. 91 at 7. By contrast, the value of haunts per the parties' contract was $156,177.00 (calculated based on its purchase price), and the haunts could potentially be valued significantly higher since they could be used to earn profits.[3] *See* ECF No.

---

[3] Plaintiff argues the haunts could be valued as low as $40,000.00 because that was apparently the haunts' salvage value in 2015. ECF No. 81 at 5, 13. However, under Colorado law, a proper valuation is made *at the time of contracting*. *See Klinger*, 130 P.3d at 1034.

81 at 13. Thus, Section 2.2 of the parties' Agreement provided plaintiff with a potential recovery that was, at the very least, almost *triple* its easily-calculable actual damages.[4]

Finally, I agree with defendants that it was not difficult to know plaintiff's actual damages from a breach at the time of contracting such that a damages clause such as this was made necessary. Again, that amount would be approximately $85,378.00—i.e., the money defendant contractually owed plaintiff, but which remained unpaid at the time of contracting. I therefore find that all three factors weigh in favor of a finding that the parties' breach clause contains an unenforceable penalty as a matter of law. *See Klinger*, 130 P.3d at 1034. Accordingly, the Court GRANTS Mr. Kopelman's motion [ECF No. 75] and holds that plaintiff's damages are capped at the amount defendants still owe plaintiffs under the contract—i.e., $53,029.28—should it ultimately prevail in this action.[5]

**ORDER**

For the reasons above, the Court DENIES plaintiff's motion [ECF No. 74] but GRANTS Mr. Kopelman's motion [ECF No. 75].

DATED this 17th day of April, 2017.

BY THE COURT:

_/s/ Brooke Jackson_

_____
R. Brooke Jackson
United States District Judge

---

[4] Plaintiff's potential recovery would be triple its calculable actual damages because, under Section 2.2 of the Agreement, plaintiff would be entitled to those calculated actual damages *and* ownership of the haunts. *See* ECF No. 74-2 at 3.

[5] Per the Court's prior order, the Agreement's interest rate provision could potentially apply to the shipping cost portion of that amount, but not the $40,000.00 owed to Mr. LaFond individually. ECF No. 89 at 10 & n.6.